[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an action for dissolution of a marriage brought by the plaintiff wife against the defendant husband. The parties were married 21 years ago on January 3rd, 1970 in Queens, New York. There is one minor child issue of the marriage, Kevin O'Neil, born December 17, 1973.
Both parties have lived in this state for more than a year prior to the institution of this action.
The breakdown of the marriage appears to have resulted from a combination of circumstances: the defendant's infidelity ten years before with the plaintiff becoming infected with a venereal disease as a result and with the plaintiff's consequent loss of trust in her husband despite her reconciliation. Even so, the marriage might have survived except for the reversal of the parties' financial situation caused in large part by circumstances beyond their control.
The defendant was an executive with Caldors for ten CT Page 6369 years before the company was sold and he lost his job in the takeover. He had been earning $80,000.00 to $100,000.00 a year. The plaintiff had not worked since the birth of their first child at the defendant's request. Until then, her earnings were put in the joint bank account. Each party had put in $2,000.00 to $3,000.00 in stock at the time of the marriage.
After the he lost his job at Caldors, the defendant then decided to go into business with two partners and his wife. The business failed. The plaintiff had agreed to the business venture and had worked daily at the store with her husband for over a year until the business started to lose money. At that point the defendant took a job with TSS at $60,000.00 a year, and the plaintiff handled the store alone.
The defendant's job, however, lasted for little more than a year when that company also went out of business. Since then, he has not been able to land a job at the level he had previously. He has sent out resumes while working on a commission basis for the American Express Long Term Care Insurance. He testified he had made $2,200.00 in four months and some of that might be in jeopardy because of cancellations.
The plaintiff, on the other hand, when the store failed started to work as a secretary at Caldors and is now an assistant manager earning $35,000.00 (plus or minus) a year. For the past six months she has been the sole provider, paying the bills to the extent her income permitted. The defendant has paid nothing during this period except for the phone bill, most of which was attributed to his phone calls, at least 30 per cent, to his girl friend, but some of which were undoubtedly calls in his business plus minimal use by his wife and children.
Prior to six months ago, however, the defendant had used his IRA of some $30,000.00 to pay whatever bills were incurred then.
The tensions which this financial situation created in part as well as the prior problems that the parties had resulted in the plaintiff's drinking to excess and being arrested for DWI about six months ago. While the plaintiff claims that her discovery that the defendant had a girl friend was the last straw to bring about the divorce, the plaintiff also admits that in effect she told him to get sex elsewhere since she found herself unable to accede to the defendant's demands for sex at what she considered inappropriate times; to wit, after an evening spent arguing.
In addition, the parties had problems with their older son who had to be treated in several hospitals including the CT Page 6370 Institute of Living for drug addiction. They recently had ordered him out of their house. He is 18 years of age.
The plaintiff plans to move to Texas and take Kevin with her because she feels Sean is a bad influence on Kevin and the living costs are much lower in Dallas than here. She has asked for custody of Kevin to which the defendant agrees. She also asked for $1.00 a year alimony and a 100 per cent of the net proceeds, if any, from the sale of the marital home after all her liabilities have been paid. There is a binder on the house for $265,000.00 but it is conditioned on the buyer's either selling his house or obtaining a mortgage. In the meantime, the house is under foreclosure, but the law day has been extended to September 28th because of the binder.
The defendant seeks to receive 50 per cent of the net proceeds after paying all of the debts listed on his affidavit.
While there is disagreement over some of the liabilities listed in his affidavit, the court believes that all of the liabilities are joint and that they should be paid out of the proceeds from the sale of the house before there is any distribution of the net equity. There is also disagreement over the disposition of the furniture and personal effects. The plaintiff wants the living room and master bedroom, all the china, dishes, pots and pans, etc. The defendant wants either the living room or the master bedroom plus some dishes and the kitchen hutch. He also would like all of the furnishings in the library while the plaintiff has asked for the library rug, lamp and wall hangings.
It appears to the court that there is fault on both sides. The plaintiff admits to drinking to excess at least since bringing the divorce. The defendant claims he was told by the plaintiff to seek sex elsewhere and he did. The plaintiff said she could not engage in sex after an evening of argument, and therefore, could not accede to what she described as her husband's demands that she perform. She concedes that he may have said that he would get it elsewhere and she said do it.
Under these circumstances, the court will treat this as a no fault divorce.
After considering all of the factors enumerated in46b-81 and 46b-82 of the Connecticut General Statutes, the court makes the following findings and orders.
1. The marriage has broken down irretrievably, and it is hereby dissolved. CT Page 6371
2. All the necessary affidavits have been filed, and the parties have lived in Connecticut for at least a year prior to the institution of this action, and the court, therefore, has jurisdiction.
3. There is one minor child issue of the marriage, Kevin O'Neil, born December 17, 1973.
4. Neither party has received federal, state or municipal aid.
5. By agreement of the parties in open court custody of the minor child Kevin is awarded the plaintiff with visitation in accordance with the child's wishes since he is 17.
6. The defendant is ordered to pay alimony of $1.00 a year to the plaintiff until she dies, cohabits or remarries.
7. Since the defendant's income is insufficient to permit a support order, none will be issued.
8. The net proceeds from the sale of the marital home after all the liabilities listed on both affidavits have been paid and the usual other expenses of sale, to wit: closing costs, mortgage, taxes, attorney's fees, broker's commission, shall be distributed as follows: sixty (60%) per cent to the plaintiff and forty (40%) per cent to the defendant.
9. The personal property shall be divided as follows: a. Each shall retain the car he or she is driving and be responsible for any balance due on the car loan.
 b. The plaintiff shall have the following items of: furniture and accessories: the master bedroom set and accessories; the furniture and accessories of Kevin's room; the morning room, paintings, plants, furniture and accessories; the front hall mirror and rug; the kitchen hutch; one half the furniture and accessories of the living room. If the parties are unable to agree on what constitutes one half of the living room, they shall report to Family Relations and accept whatever recommendation is made by Family Relations. The court will retain jurisdiction to rule on any objection to that recommendation.
c. All the china shall belong to the plaintiff.
 d. The balance of the kitchen utensils, bedding, towels, pots and pans, and dishes shall be divided equally between the parties with any dispute referred to CT Page 6372 Family Relations with the same provisions as for the disposition of the living room as set forth above.
10. The defendant shall have the following items: a. The library rug, lamp, wall hangings and furniture. b. The guest room furniture and accessories. c. The dining room set. d. The refrigerator. e. Tools. f. Den furniture, rugs and large screen television.
11. While the parties have both been advised of their rights and their exposure to a wage order execution, there being no basis for a support order, no wage execution shall issue.
It is so ordered.
MARGARET C. DRISCOLL, STATE TRIAL REFEREE